**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| KLINTWORTH & ROZENBLAT LLP, | **FIRST AMENDED COMPLAINT (Pursuant to Leave of Court Granted on 8/27/2025)** |
| Plaintiff, | |
| vs. | |
| MARK S. MANDEL, | Judge Manish S. Shah |
| Defendant. | Case Number: 1:25-cv-05795 |

Plaintiff, Klintworth & Rozenblat LLP ("Plaintiff"), by and through its attorneys, ARENAS LAW, LLC, for its First Amended Complaint alleges upon personal knowledge as to its own acts and upon information and belief as to all other matters against Defendant Mark S. Mandel ("Defendant") as follows below. Plaintiff's First Amended Complaint is filed pursuant to the Court's leave to amend granted on 8/27/2025 which gave Plaintiff until 8/28/2025 to file an Amended Complaint.

**PRELIMINARY STATEMENT**

This is an action for fraud, breach of fiduciary duty, breach of contract, conversion, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, and unjust enrichment arising out of Defendant Mark S. Mandel's fraudulent inducement and ongoing misrepresentations that caused Plaintiff Klintworth & Rozenblat LLP to hire him as an income partner under false pretenses. Defendant falsely represented that he had a substantial book of portable business, fabricated billing records, and submitted materially false time entries for work that was never performed. Plaintiff relied on these misrepresentations in extending employment, paying substantial draws and benefits, and

1

remitting recruiting fees. Defendant never performed any actual legal work for real clients while employed by Plaintiff.  Plaintiff seeks compensatory and punitive damages, statutory damages and fees under the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505), the imposition of a constructive trust over draws and benefits paid under false pretenses, an award of reasonable attorney's fees and costs, pre-judgment and post-judgment interest, and such other and further relief as the Court deems just and proper. Alternatively, Plaintiff seeks the entry of a declaratory judgment that (1) the employment agreement was procured by fraud and is void ab initio, (2) Defendant is not entitled to retain any compensation or benefits paid pursuant to the employment agreement, and (3) Plaintiff is entitled to reimbursement of all compensation and benefits paid to Defendant pursuant to that agreement.

## PARTIES

1.      Plaintiff, Klintworth & Rozenblat LLP, (hereinafter "Plaintiff") is a limited liability partnership organized under Illinois law.  Plaintiff's only equity partners are Klintworth IP LLC and Rozenblat IP LLC.  Klintworth IP LLC's sole member is Timothy Klintworth, a natural person domiciled in Illinois and therefore a citizen of Illinois. Rozenblat IP LLC's sole member is David Rozenblat, a natural person domiciled in Florida and therefore a citizen of Florida. No member or equity partner of Plaintiff is a citizen of New York. Accordingly, for purposes of 28 U.S.C. § 1332, Plaintiff is a citizen of Illinois and Florida.

2.      Defendant Mark S. Mandel is a natural person domiciled in New York and therefore a citizen of New York.

**JURISDICTION AND VENUE**

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

4.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. The Defendant purposefully directed fraudulent communications to Plaintiff in this District and executed an employment agreement specifying that it is governed by Illinois law.

**FACTUAL ALLEGATIONS**

5.      On June 3, 2024, Plaintiff executed a contingency search agreement with a recruiting Agency ("the Agency") agreeing to pay the Agency recruiting fees based on the compensation Plaintiff paid to candidates which were recruited by the Agency and hired by Plaintiff.

6.      On July 30, 2024, the Agency presented Plaintiff with a candidate ("Defendant"), via interstate email, claiming Defendant had a $3,000,000 portable book of business with long-standing client relationships, including approximately 50% of his portables being with Wells Fargo that had been a client of Defendant's for 18 years.  The Agency asserted that Defendant recently left Chapman and Cutler due to a conflict. The Agency further asserted that Defendant's previous years' generations were $3.25 Million in 2023; $2.8 Million in 2022; and $3.1 Million in 2021.

7.     The same day, the Agency, through interstate wired emails, provided Plaintiff with a business disclosure Defendant had prepared.  The business disclosure listed that Defendant's 2024 year-to-date originations were $1.6 Million; his 2023 originations were

$3.25 Million; his 2022 originations were $2.8 Million; and his 2021 originations were $3.1 Million. The business disclosure now appears to have contained inflated, or completely fabricated, origination figures and client projections. A copy of the business disclosure is attached hereto as Exhibit 1 (Filed With The Court Under Seal on 5/23/2025, Docket # 2) and incorporated herein by reference.

8. The business disclosure also listed that Defendant's 2024 active clients were as follows:

Wells Fargo – 18 year relationship projected for $1.2 Million in fees for the next 12 months;

IMC – 13 year relationship projected for $1 Million in fees for the next 12 months;

Russty LLC – 15 year relationship projected for $100,000 in fees for the next 12 months;

Schwab – 9 year relationship projected for $150,000 in fees for the next 12 months;

Graybar Electric – 2 year relationship projected for $150,000 in fees for the next 12 months;

Global Helium – 1 year relationship projected for $25,000 in fees for the next 12 months;

Unidoc Health – 1 year relationship projected for $25,000 in fees for the next 12 months;

Alkeon – 12 year relationship projected for $25,000 in fees for the next 12 months; and

Ameriwest Lithium – 1 year relationship projected for $25,000 in fees for the next 12 months.

4

9.      The business disclosure additionally listed Defendant's expected fees for the next 12 months to include: Fund Bank - $150,000; Kraken - $50,000; Computershare - $50,000; and Odeon Capital - $50,000.

10.      On August 2, 2024, Plaintiff (through Timothy Klintworth and David Rozenblat), conducted a phone conference with Defendant. Defendant confirmed the accuracy of the business disclosure that he had prepared which the Agency had provided to Plaintiff. Defendant further confirmed that he had a $3,000,000 portable book of business with long-standing client relationships, including approximately 50% of his portables being with Wells Fargo that had been a client of Defendant's for 18 years. Plaintiff further confirmed that he had recently left Chapman and Cutler due to a conflict. Defendant further confirmed that his previous years' generations were $3.25 Million in 2023; $2.8 Million in 2022; and $3.1 Million in 2021.

11.      On August 5, 2024, relying on Defendant's representations, Plaintiff, through an interstate wired email, extended an offer letter to Defendant with a $60,000 monthly draw which Defendant executed the same day. A copy of the signed employment agreement is attached hereto as Exhibit 2 (Filed With The Court Under Seal on 5/23/2025, Docket # 2) and incorporated herein by reference. Under the terms of the employment agreement, Defendant would be a full-time, at-will, non-equity income partner of the firm. Under the terms of the employment agreement, Defendant received a compensation formula in which he was to receive a percentage of his originated and billed revenue. Further, Defendant was to receive bi-monthly draws towards his compensation formula with quarterly bonuses to be paid to the extent his compensation under his compensation formula exceeded his draws during that quarter. The employment agreement further

specified that if less than the amount drawn was earned under Defendant's compensation formula, that Plaintiff, at any time upon written notice, may require Defendant to reimburse Plaintiff for the difference between the amount drawn and the compensation Defendant had earned under his compensation formula. The employment agreement additionally specified that if Defendant elected to enroll in Plaintiff's health, dental, or vision insurance plans that Defendant would pay 100% of the premiums. The employment agreement further specified that the agreement would be governed and interpreted in accordance with Illinois law without regard to conflict of laws, and that in the event of any dispute concerning the agreement or Defendant's employment with Plaintiff, that the suit may only be brought in a court of competent jurisdiction in the State of Illinois, County of Cook, with Plaintiff being entitled to reasonable attorney's, paralegals' and paraprofessionals' fees and court costs at all trial and appellate levels if the Plaintiff prevailed in the dispute.

12. On August 15, 2024, Defendant started his employment with Plaintiff and was wired, via interstate commerce, a $35,000 draw at hiring.

13. From September 2024 through December 11, 2024, Plaintiff repeatedly asked Defendant via interstate emails, phone call, and text messages when he would send out his first bills to his clients. Defendant continually told Plaintiff that he was doing work for his clients but wanted to hold onto the bills until he had more time to bill as they would be annoyed by receiving small bills and that he typically billed his clients at completion of the work. Defendant further told Plaintiff that his clients were all financial institutions which had a policy of not signing engagement letters but that these were long-time clients of his who always paid their bills on time.

14. On November 22, 2024, Plaintiff wired, in interstate commerce, the Agency a $60,000 placement fee for having placed Defendant with Plaintiff.

15. On December 13, 2024, Defendant represented to Plaintiff's billing department, via interstate text message, that he personally sent out $145,686 of bills to six purported clients of his. Those bills had been entered into Plaintiff's billing software at Defendant's instructions. Those bills contained Defendant's time entries on the following dates: 8/14/2024; 8/16/2024; 8/20/2024; 8/22/2024; 8/26/2024; 8/27/2024; 8/28/2024; 8/29/2024; 8/30/2024; 9/4/2024; 9/5/2024; 9/6/2024; 9/9/2024; 9/10/2024; 9/12/2024; 9/13/2024; 9/16/2024; 9/18/2024; 9/20/2024; 9/23/2024; 9/24/2024; 9/25/2024; 9/27/2024; 9/30/2024; 10/1/2024; 10/2/2024; 10/7/2024; 10/8/2024; 10/9/2024; 10/10/2024; 10/16/2024; 10/17/2024; 10/21/2024; 10/23/2024; 10/25/2024; 11/1/2024; 11/4/2024; 11/5/2024; 11/7/2024; 11/8/2024; 11/11/2024; 11/12/2024; 11/13/2024; 11/15/2024; 11/18/2024; 11/19/2024; 11/20/2024; 11/21/2024; 11/22/2024; 11/25/2024; 11/26/2024; and 12/7/2024. Copies of pertinent correspondence between Defendant and Plaintiff along with the $145,686 in bills that Defendant claimed to have billed to his purported clients is attached hereto as Exhibit 3 (Filed With The Court Under Seal on 5/23/2025, Docket # 2) and incorporated herein by reference.

16. On January 8, 2025, Defendant represented to Plaintiff's billing department that he personally mailed, in interstate commerce, an additional $116,610 of bills to the six purported clients of his. Those bills had been entered into Plaintiff's billing software at Defendant's instructions. Those bills contained Defendant's time entries on the following dates: 12/2/2024; 12/3/2024; 12/4/2024; 12/5/2024; 12/6/2024; 12/9/2024; 12/10/2024; 12/11/2024; 12/12/2024; 12/13/2024; 12/16/2024; 12/17/2024; 12/18/2024; 12/19/2024;

12/20/2024; 12/23/2024; 12/24/2024; 12/26/2024; 12/27/2024; and 12/30/2024. Copies of pertinent correspondence between Defendant and Plaintiff along with the additional $116,610 in bills that Defendant claimed to have billed to his purported clients is attached hereto as Exhibit 4 (Filed With The Court Under Seal on 5/23/2025, Docket # 2) and incorporated herein by reference.

17.     In total, including the above-recited December 13th, 2024 and January 8th, 2025 bills, Defendant represented to Plaintiff's billing department that he personally mailed, in interstate commerce, $145,686 + $116,610 = $262,296.00 in bills to the six purported clients of his.

18.     On February 14, 2025, Plaintiff did a review of Defendant's activity and it was apparent that: Defendant had not been using his work email account to interact with clients; that he had not provided Plaintiff with any client engagement letters for his clients; that he had not saved any work-product or client information on Plaintiff's server; that he had not provided the Plaintiff with any client contact information for his clients making it impossible for Plaintiff to contact his clients for payment; that he had refused to let Plaintiff's billing department send out his clients' bills instead claiming to have mailed, through the US mail, the bills out himself; that he had not been regularly entering his time weekly, and that he had not updated his LinkedIn profile to update his employment from his prior firm to Plaintiff.

19.     On that same day, Defendant told Plaintiff that he had talked to his six purported clients and that all of them would be paying their aging, overdue invoices in full by the end of February with the exception of one purported client who would be paying theirs by the end of March.  As evidence of this, Defendant forwarded Plaintiff an email

8

from a random Gmail account with the person purporting to be one of Defendant's clients and stating that he would chase Defendant's other clients for payment.

20. On February 27, 2025, Defendant's employment with Plaintiff ended. During Defendant's approximately six month employment with Plaintiff, he had not collected any funds from his purported clients.

21. During Defendant's employment, Plaintiff wired, in interstate commerce, Defendant $325,000 in draws and health insurance payments with payments being made on: 8/9/2024; 8/12/2024; 8/30/2024; 9/13/2024; 9/30/2024; 10/15/2024; 10/31/2024; 11/15/2024; 11/29/2024; 12/13/2024; 12/31/2024; 1/15/2025; and 1/31/2025.

22. After Defendant's employment with Plaintiff ended, Defendant refused to reimburse Plaintiff despite Plaintiff's oral and written requests, under the terms of the employment agreement, that Defendant reimburse Plaintiff for the $325,000 in draws and health insurance premiums paid to Defendant.

23. On March 4, 2025, Plaintiff conducted internet searches to attempt to obtain the contact information for all six of Defendant's purported clients that he had billed while being employed by Plaintiff. Plaintiff, on that same day, attempted to reach all six of these purported clients but was unable to reach anyone.

24. On March 31, 2025, Plaintiff was informed via interstate wired email by one of Defendant's six purported clients, who Defendant had claimed to have sent out $74,926 in bills to, that Plaintiff appeared to have a problem as Defendant had not performed any work for them since late 2023 while at his former law firm, that they never engaged Plaintiff, and that they never received any billings from Plaintiff. A copy of the interstate wired email from Defendant's purported client is attached hereto as Exhibit 5

9

(Filed With The Court Under Seal on 5/23/2025, Docket # 2) and incorporated herein by reference.

25. Other than Defendant's purported client that informed Plaintiff via email on March 31, 2025 that they had a problem with Defendant, Plaintiff has been unable to reach any of Defendant's other five purported clients. To date, none of Defendant's purported clients have paid Plaintiff anything. Upon information and belief, Plaintiff has reason to believe that all of Defendant's billed time entered into Plaintiff's time entry system is fraudulent, and that all six of Defendant's purported clients never engaged Defendant while he was employed by Plaintiff. Upon information and belief, Plaintiff has reason to believe that none of Defendant's six purported clients were aware of Defendant's scheme to fabricate his engagement with them.

26. Plaintiff discovered, after Defendant's employment with Plaintiff ended, that Defendant has an extensive history of lawsuits, judgments, and liens against him. Defendant did not disclose this to Plaintiff.

27. Plaintiff has reason to believe that Defendant engaged in a repeated and coordinated scheme to induce Plaintiff to hire Defendant, and then to induce Plaintiff to continue to pay Defendant draws and benefits after hire, based on omissions, concealment, and false representations transmitted by interstate email, interstate phone calls, and interstate web calls with payments to Defendant made by interstate wire.

28. Plaintiff relied on Defendant's omissions, concealment, and false misrepresentations which caused Plaintiff to incur substantial damages including, but not limited to, compensatory damages, economic and reputational harm, recruiting fees, draws

and health insurance payments, loan fees and interest, onboarding costs, lost business opportunities, and attorney's fees and costs. These damages continue to accrue.

## CAUSES OF ACTION

### COUNT I:
### Fraudulent Misrepresentation, Inducement, Omission, and Concealment

29.     Plaintiff realleges and incorporates the preceding paragraphs as if fully set forth herein.

30.     Defendant knowingly made material false representations and omissions to Plaintiff with the intent to induce Plaintiff to enter into an employment relationship and to continue making payments under that relationship.

31.     Defendant made the following representative (including but not limited to) false misrepresentations and omissions to Plaintiff:

- On July 30, 2024, Defendant represented that Defendant had $3,000,000 in portable business, naming specific clients including Wells Fargo, IMC, Schwab, and others.

- Defendant prepared and submitted a business disclosure listing detailed billing and origination history for 2021 through 2024, which was materially false.

- On December 13, 2024 and January 8, 2025, Defendant claimed to have mailed $262,296 in client bills, which were fictitious.

- On February 14, 2025, Defendant falsely stated that clients would pay outstanding balances by March and fabricated supporting communications.

11

32. Defendant's entire business disclosure and billing history were fabricated. Defendant knew that he had no clients and had performed no actual work for Plaintiff.

33. Defendant made these representations with the intent that Plaintiff would hire him, pay recruiting fees, pay draws, and provide health benefits.

34. Plaintiff relied on Defendant's representations in extending an employment offer, taking out bank loans thereby incurring bank fees and interest, paying recruiting fees, wiring Defendant compensation, and continuing to make draw and benefits payments to Defendant.

35. As a direct and proximate result of Defendant's fraudulent misrepresentations, inducement, omissions, and concealment, Plaintiff suffered compensatory damages in an amount to be proven at trial. Because Defendant's conduct was intentional, willful, and malicious, Plaintiff also seeks punitive damages sufficient to punish Defendant and deter similar misconduct, together with Plaintiff's costs of suit and, to the extent authorized by statute or contract, recovery of its reasonable attorney's fees.

## COUNT II: BREACH OF FIDUCIARY DUTY

36. Plaintiff realleges and incorporates the preceding paragraphs as if fully set forth herein.

37. Defendant, as an income partner at Plaintiff's law firm, owed Plaintiff a fiduciary duty of loyalty, candor, and full disclosure.

38. Defendant breached this duty by:

- Fabricating client relationships and billing records.

- Misappropriating firm resources (draws, benefits, staffing) under false pretenses.

- Intentionally concealing his inability or unwillingness to perform work.

- Deceiving Plaintiff into maintaining an employment relationship to his benefit and Plaintiff's detriment.

39. As a direct and proximate result of Defendant's breach of fiduciary duty, Plaintiff suffered compensatory damages in an amount to be proven at trial. Because Defendant's conduct was intentional, willful, and malicious, Plaintiff also seeks punitive damages sufficient to punish Defendant and deter similar misconduct, together with Plaintiff's costs of suit and, to the extent authorized by statute or contract, recovery of its reasonable attorney's fees.

### COUNT III: BREACH OF CONTRACT

40. Plaintiff realleges and incorporates the preceding paragraphs as if fully set forth herein.

41. Plaintiff and Defendant entered into an employment agreement on August 5, 2024.

42. Defendant breached the employment agreement by:

- Failing to perform any legal services for actual clients.

- Failing to remit billing or generate revenue as required by the compensation formula.

- Failing to repay Plaintiff unearned draws after written demand, as expressly required under the agreement.

- Failing to repay Plaintiff insurance premiums after written demand, as expressly required under the agreement.

13

43.     As a direct and proximate result of Defendant's breaches of contract, Plaintiff suffered economic loss and is entitled to compensatory damages in an amount to be proven at trial, together with Plaintiff's costs of suit and, to the extent authorized by statute or contract, such as the employment agreement, recovery of its reasonable attorney's fees.

### COUNT IV: CONVERSION

44.  Plaintiff realleges and incorporates the preceding paragraphs as if fully set forth herein.

45.     Defendant wrongly exercised control, without authority or justification, over $325,000 in Plaintiff's funds by continuing to accept draw payments and benefits under false pretenses after knowingly failing to perform work or generate billable revenue.

46.     Plaintiff demanded return of those funds, and Defendant refused.

47.     Defendant's conduct constituted willful and malicious conversion.

48.     As a direct and proximate result of Defendant's wrongful conversion, Plaintiff is entitled to compensatory damages in an amount to be proven at trial.  Plaintiff is additionally entitled to recover punitive damages to punish Defendant's willful and malicious conduct, and Plaintiff's costs of suit and, to the extent authorized by statute or contract, reasonable attorney's fees.

### COUNT V: VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT (815 ILCS 505/2)

49.     Plaintiff realleges and incorporates the preceding paragraphs as if fully set forth herein.

50.     Defendant engaged in deceptive acts and practices by falsely representing his portable business, clients, billing, and qualifications to induce Plaintiff to enter into and continue a business relationship with Defendant.

51.     Defendant's misrepresentations were made in the course of trade and commerce, and directed at Plaintiff as a consumer of legal services and professional services.

52.     Defendant's conduct offended public policy, was immoral, unethical, oppressive, and caused substantial injury to Plaintiff.

53.     As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff is entitled to actual damages in an amount to be proven at trial.  Plaintiff is entitled to recover compensatory damages, punitive damages, and its reasonable attorney's fees and costs under 815 ILCS 505/10a.

### COUNT VI: UNJUST ENRICHMENT (Pled In The Alternative to Count III)

54.     Plaintiff realleges and incorporates the preceding paragraphs as if fully set forth herein.

55.      In the alternative to Plaintiff's claim for breach of contract in Count III, Defendant was unjustly enriched by receiving $325,000 in compensation and benefits under false pretenses and without performing services.

56.      Defendant knowingly received and accepted the benefit of Plaintiff's payments and other benefits to which Defendant was not entitled.

57.      It would be inequitable and unconscionable to allow Defendant to retain these funds which would unjustly enrich the Defendant.

58.     As a direct and proximate result of Defendant's unjust enrichment, Plaintiff is entitled to restitution in the amount of at least $325,000. Plaintiff further seeks the imposition of a constructive trust over such funds or property wrongfully obtained, together with pre-judgment and post-judgment interest, to prevent Defendant's unjust retention of these benefits.

59.     Additionally, because the employment agreement was procured through fraud, misrepresentation, or omission, Plaintiff is entitled to rescission or a declaration that the employment agreement is void ab initio and unenforceable. Any benefits conferred upon Defendant under this agreement must be unwound through restitution or the imposition of a constructive trust.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant as follows:

A.      Award compensatory damages.

B.      Award punitive damages where allowed by law.

C.      Award statutory damages and fees under the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505).

D.      Impose a constructive trust over draws and benefits paid under false pretenses.

E.      Alternatively, enter a declaratory judgment that: (1) the employment agreement was procured by fraud and is void ab initio; (2) Defendant is not entitled to retain any compensation or benefits paid pursuant to the

employment agreement; and (3) Plaintiff is entitled to reimbursement of all compensation and benefits paid to Defendant pursuant to that agreement.

F.      Award reasonable attorney's fees and costs.

G.      Award pre-judgment and post-judgment interest.

H.      Award such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED this 28th day of August, 2025

KLINTWORTH & ROZENBLAT LLP

Plaintiff

By:     _/Karen Arenas/_____
        Karen N. Arenas, # 6325514
        ARENAS LAW
        19 N. Green St
        Chicago, IL. 60607
        Telephone: 773-699-6972
        karen@arenas-law.com
        *Attorney for Plaintiff*

17